Eastern District of Kentucky
**F I L E D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

MAY 0 2 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

ANTHONY CARROLL,                    )
                                    )
          Petitioner,               )        Civil Action No. 6: 04-332-DCR
                                    )
V.                                  )
                                    )
JAMES MORGAN,                       )        **MEMORANDUM OPINION**
                                    )        **AND ORDER**
          Respondent.               )
                                    )
          *** *** *** ***

        This matter is pending for consideration of Respondent Warden James Morgan's

(hereafter, the "Commonwealth") objections to the Report and Recommendation ("R&R") filed

by United States Magistrate Judge J. B. Johnson, Jr., [Record No. 12] recommending that

Anthony Carroll's petition for a writ of habeas corpus [Record No. 1] be granted.  The

Respondent's motion to dismiss or, in the alternative, for summary judgment is also pending.

[Record No. 9]  Carroll's petition specified two arguments in favor of granting the writ.  The

magistrate found the first ground sufficient to grant relief.  The Commonwealth has filed

objections to the R&R.  Thereafter, the Court directed the Commonwealth to produce all

available tapes or transcripts of Carroll's criminal proceedings.  The Commonwealth satisfied

that Order by producing videotapes of all trial-related proceedings.  The Court has now

thoroughly reviewed the parties' briefs, the videotapes of the trial, and the R&R.

        For the reasons discussed herein, the Court will reject the Magistrate Judge's R&R,

except as it relates to the timeliness and exhaustion of Carroll's ineffective assistance arguments,

deny Carroll's petition for a writ of habeas corpus, and grant a certificate of appealability regarding the issue of ineffective assistance of counsel for failure to reveal the nature of Carroll's prior felony conviction.

## I.   BACKGROUND

In 1989 Carroll married Connie Leach. At the time of the marriage, Leach had two sons from a previous marriage -- MC and JC. In 1991, Carroll adopted the two boys. While married, the couple had a daughter, BC. In 1994, the couple divorced, although trial testimony suggested that they separated as much as two years prior to their divorce. Following the divorce, Leach maintained custody of MC and JC, while Carroll had custody of BC. According to trial testimony, Leach and Carroll's post-divorce relationship was relatively harmonious and all three children were allowed to stay at either the mother or father's residence, as they saw fit.

In 1995, Carroll was convicted of a felony offense of "possession of a forged instrument/theft over $300." In June 1996, Leach re-married. A few months later, Leach filed a complaint with social services, alleging that BC was being neglected. After conducting an investigation and interviewing BC, the authorities concluded that BC was receiving appropriate care. In September 1997, Leach called 911, informing them that BC had just told her that Carroll had sexually abused BC a year earlier. Officer Joel Woods responded to the call and investigated the complaint, along with a social worker. Both Woods and the social worker concluded that Leach had coached BC to make these allegations. However, on November 3, 1997, an indictment was returned against Carroll on the basis of BC's allegations. (Appx. at 17).

-2-

At the time of Carroll's direct appeal in the instant case, it appears that no action had been taken in that matter. (Appx. at 17).

Two weeks after BC's allegations, MC informed Leach that she should believe BC's allegations because he also had been abused by Carroll. He alleged that he had been forcibly sodomized by Carroll approximately 15 times between 1991 and 1992, when he was between the ages of 8 and 9. After MC's allegations, BC was removed from Carroll's custody and temporarily placed in state custody. She was placed with her mother in November 1997. At the time of trial, she was living with Leach but was legally a ward of the state.

On April 24, 1999, a Laurel County Grand Jury returned an eight count indictment against Carroll, charging him with seven counts of first degree sodomy, in violation of K.R.S. §510.070(1)(b), and one count of being a persistent felony offender for his 1995 theft conviction.[1] The prosecutor offered Carroll an *Alford* plea with a three-year recommended sentence. His attorney recommended that he accept the deal, but Carroll refused.

The trial took place on May 7, 1999 in Laurel Circuit Court. The testimony against Carroll consisted almost entirely of the testimony of MC. After watching a video of his testimony, the Kentucky Supreme Court noted that his testimony was "specific, explicit, emotionally compelling, and highly believable." (Appx. at 67). MC specifically discussed five incidents of rape. He recalled the dates based upon other events occurring at the time, including a time around Halloween, around the Fourth of July, and when his parents installed a pool at the house. He described how, on most occasions, Carroll would enter his bedroom (which he shared

---

[1]     Prior to trial, one of the sodomy counts was dismissed.

-3-

with his younger brother) after everyone was in bed, crawl onto his bunk, remove his underwear, have him "get on all fours" and anally rape him. (5/4/99 14:44-15:02). He also described how on one occasion he was raped when Carroll let MC stay up to watch television. He described how, on the first rape, Carroll climbed into his bunk and told him to kiss him like he would want to kiss Lynn (a girl MC liked). (5/4/99 14:47). When he refused, MC kissed him, putting his tongue in his mouth. MC told the jury that Carroll would "clean him up" afterwards, taking him to the bathroom to remove semen and fecal matter. In response to a question asking if he used "some kind of washcloth," MC replied, "no, toilet paper." (5/4/99 14:59). Prior to the last rape, Carroll told him that he could tell him next time if he did not want to do it. (5/4/99 14:53). On the last occasion, however, MC told him he did not want to do it, but Carroll told him to "shut up" and raped him anyway. (5/4/99 14:53). The abuse stopped shortly thereafter, when Leach and Carroll separated. Testimony also indicated that MC suffered from ulcers during the time of the abuse, *i.e.*, 1991-1992. The physician, at the time, assumed it was caused by stress at school. MC also testified that he would choose to stay overnight with Carroll after his parents separated and that no abuse occurred during those stays.

Carroll's theory of the case was that Leach and or MC had orchestrated these claims in order to allow Leach to get custody of BC. In support of this argument, counsel called Officer Woods to elicit testimony regarding his opinion that the BC allegations had been concocted in order to gain custody. In addition, Carroll testified, recalling Leach's prior claims that BC was being neglected and abused. He noted that a previously amicable custody arrangement began to disintegrate around the time of the BC allegations, recalling how Leach would be reluctant

to "give up" BC when he would come to pick her up. Finally, Carroll also called JC to testify, MC's younger brother. JC testified that Carroll had never abused him and that he had not awakened to the sounds of MC being raped. He also contradicted MC's testimony that MC slept on the top bunk, claiming that he had slept on top. Although he was only five and six when these events occurred, he claimed he could remember because he remembered his brother pulling him from the top bunk to wrestle.

At the close of the Commonwealth's case, the judge dismissed one sodomy count and the PFO count. After hearing four prosecution witnesses and three defense witnesses, the case was presented to the jury shortly after 5:00 p.m. Around 9:30 that night, the jury returned a guilty verdict on all five sodomy counts presented to them. The jury returned at 11:00 the next morning for the penalty phase. After hearing brief arguments and deliberating through lunch, the jury recommended the maximum of twenty years for each sentence, with the sentences to run consecutively, for a total sentence of 100 years. The judge accepted that recommendation and imposed the 100 year sentence on June 25, 1999.

Carroll appealed his conviction and the Supreme Court of Kentucky which affirmed the judgment on August 24, 2000, in an unpublished, unanimous opinion. On January 21, 2001, Carroll filed a Kentucky Criminal Rule 11.42 motion. Following a hearing, that motion was denied. The Kentucky Court of Appeals affirmed and on February 11, 2004, the Supreme Court of Kentucky denied discretionary review. On July 12, 2004, Carroll filed the instant habeas petition in this Court. On February 16, 2005, the Magistrate Judge issued an R&R, recommending a conditional grant of the writ.

## II.    STANDARD OF REVIEW

Carroll's petition is governed by 28 U.S.C. § 2254, which provides, in relevant part, that:

d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  The Supreme Court has made two important points about review under §

2254(d):

[f]irst, we have explained that a decision by a state court is "contrary to" our clearly established law if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . . Second, respondent can satisfy § 2254(d) if he can demonstrate that the [state] Supreme Court's decision involved an "unreasonable application" of clearly established law.  As we have explained, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

*Price v. Vincent*,  538 U.S. 634, 640-41 (2003) (internal citations and quotations omitted).

Regarding the first prong of review, this Court's review of the state decision is limited

"to the law as it was 'clearly established' by [Supreme Court] precedents at the time of the state

court's decision." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  And with respect to the second

prong of review, the grant of a writ premised on misapplication of law by a state court can only

-6-

occur if the state court's reasoning was "objectively unreasonable" and not if it was merely incorrect or erroneous. *Id.* at 521; *see also Brown v. Payton*, 544 U.S. ___, 125 S.Ct. 1432, 1439 (2005). This Court's review, therefore, is limited and does not necessarily require a grant of the writ simply because this Court determines that the state court's analysis was incorrect. The writ is only intended to cure serious constitutional errors, rather than determine guilt or innocence, *Herrera v. Collins*, 506 U.S. 390, 400 (1993), because "[f]ederal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Carroll filed this petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Thus, the AEDPA applies to this case. (R&R at 5).

### III.   LEGAL ANALYSIS

Carroll presented two alleged constitutional errors in his petition for a writ of habeas corpus: (1) ineffective assistance of counsel and (2) denial of right to a fair and impartial jury. [Record No. 1, pp. 5-6] The magistrate recommended granting the writ on the basis of the first argument. The Commonwealth filed timely objections.

#### A.   Ineffective Assistance

Carroll makes five arguments regarding his trial counsel's alleged ineffectiveness: (1) counsel erroneously believed that he was not permitted to inform the jury of the nature of his prior felony conviction; (2) counsel erroneously informed Carroll that he could not waive a jury trial; (3) counsel failed to investigate and interview witnesses for the defense; (4) counsel did not

inform the Court when a witness was allegedly being coached; and (5) counsel failed to recommend that Carroll accept the three-year plea offer.

The Supreme Court outlined the relevant considerations for a claim of ineffective assistance of counsel in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides that in order for counsel's ineffective assistance to rise to the level of a constitutional violation, the defendant must demonstrate: (1) objectively deficient performance and (2) resulting prejudice that renders the trial unfair and the result unreliable. *Id.* at 687; *Mallett v. United States*, 334 F.3d 491, 497 (6th Cir. 2003). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Trial counsel's tactical decisions are particularly difficult to attack, *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996), and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy. *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

### 1.    Nature of Carroll's Prior Conviction

This argument is Carroll's strongest and is the basis for the magistrate's recommendation that the petition be granted. Before the trial, the Commonwealth alerted Carroll and the Court that it intended to introduce 404(b) evidence of BC's prior allegations of sexual abuse. In addition, Carroll planned to testify, which allowed the Commonwealth to introduce the fact that he had previously been convicted of a felony. During voir dire, Carroll's attorney asked the jurors whether they could fairly weigh the testimony of a convicted felon. One prospective juror

-8-

asked if Carroll was permitted to tell them the nature of the prior conviction. (5/4/99 11:31). Both Carroll's attorney and the judge informed the jury that noone could disclose the nature of the prior conviction. (5/4/99 11:31-11:33). Carroll claims that the prospective juror replied that it seems that this automatically "scales down the defendant's side," although the Court has been unable to decipher the comment despite repeatedly watching the video. (5/4/99 11:33). On direct review, the Kentucky Supreme Court noted that Carroll's counsel and the trial judge were incorrect in stating that Carroll was not permitted to identify his past felony. (Appx. at 65). Kentucky Rule of Evidence 609(a) clearly states that a witness "may choose to disclose the identity of the crime upon which the conviction is based."

During trial, the past allegations regarding BC were repeatedly discussed. The prosecutor referenced them several times, including during his opening and closing statements. Whether this 404(b) evidence was appropriately admitted is a state evidentiary matter which is not challenged in the instant petition, nor could it be because "there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Instead, Carroll argues that by repeatedly referencing the BC allegations while simultaneously referencing Carroll's unidentified prior felony, the jury likely believed that his prior felony involved BC's allegations of abuse. Thus, he argues that his attorney's erroneous belief that he could not disclose the nature of his prior felony had a substantial impact on his case and likely led to his conviction based upon the incorrect assumption that he had been previously convicted of molesting his daughter. The magistrate found this argument persuasive, concluding

that the jury likely convicted Carroll through improper and erroneous innuendo, which could have been avoided, had it not been for attorney error.

In considering this argument, the Kentucky Supreme Court correctly identified *Strickland* as the appropriate standard and assumed, *arguendo*, that Carroll's counsel had performed deficiently. (Appx. at 66). The Court agrees with the magistrate that counsel's performance was deficient. Counsel was not aware of an important rule of evidence. And even if this failure was excusable, it should have seemed illogical to counsel that his client would not be permitted to reveal the nature of his prior conviction if he believed that fact would help his case, since the basis for withholding such information is to protect the rights of the defendant. He clearly had a right to waive this right, if it was in his best interest. It is true that the trial court compounded this error by agreeing with defense counsel that the nature of the conviction could not be revealed. Of course, he may have assumed that the defendant did not want the nature of his conviction known, and may have simply been informing the jury that a prior conviction is not an issue properly before them. The state court instructed the jury that Carroll was only on trial for the conduct charged in the indictment and the prior felony could only be used to judge his credibility. The trial judge may have assumed that defense counsel was aware that Carroll could inform them of the nature of the conviction, if he had wished to do so. Regardless, the Court agrees that counsel's performance was deficient, in this regard.

In rejecting Carroll's *Strickland* claim, the Kentucky Supreme Court found that Carroll had not satisfied the prejudice prong because Carroll "argument presumes the jury made two great assumptions -- first, that Appellant's undisclosed conviction was for a sex crime and

-10-

second, that conviction of one sex crime necessarily indicates guilt of the later-charged sex crime." (Appx. at 66). After reviewing the tapes of the trial, this Court agrees with the Supreme Court of Kentucky. Of course, it is not necessary for the Court to agree in order to deny the petition, as the state determination can only be overcome if it is "objectively unreasonable."[2] Further,

> the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004). "The *Strickland* test, by its nature, is general and not subject to mechanical application." *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004). Thus, the application of the *Strickland* standard by state courts is entitled to more leeway than application of less general standards.

In order for counsel's error to have rendered the verdict unreliable, it must appear that the jury believed Carroll's prior conviction was for molesting BC and that such a conviction makes MC's allegations more credible. First, Carroll introduced the testimony of Officer Woods who noted that he had found that BC allegations lacked credence. The prosecution did not attempt

---

[2]       This distinction, between a *de novo* review and the highly deferential habeas review, was recently highlighted by Justice Breyer's concurrence in *Payton*. In agreeing that the Ninth Circuit's grant of habeas in a death penalty case must be reversed, Justice Breyer noted that "[w]ere I a California state judge, I would likely hold that Payton's penalty-phase proceedings violated the Eight Amendment," while ultimately concluding that "[n]onetheless, in circumstances like the present, a federal judge must leave in place a state-court decision unless the federal judge believes it is contrary to, or involved an unreasonable application of, clearly established federal law . . . ." *Payton*, 125 S.Ct. at 1442-43 (Breyer, J., concurring).

to rebut this testimony. Second, Carroll himself testified that the police had found no reason to pursue the BC allegations. (5/4/99 16:00). He also testified that BC's custody was still in dispute at the time of trial and that a custody hearing had been scheduled for just weeks before the trial but was continued until after the trial. (5/4/99 16:05, 16:08). None of this evidence was contradicted by the prosecution.

Connie Leach's testimony confirmed that she did not have legal custody of BC and that, instead, the Commonwealth of Kentucky was BC's legal guardian. Thus, the testimony clearly indicated that Carroll had not been convicted of molesting BC. Both Officer Woods and Carroll testified that the allegations had not been corroborated. Further, Carroll obviously could not still be in a legal fight for BC's custody if he had been convicted of molesting her. Finally, during the penalty phase, the jury learned the nature of Carroll's prior felonies. Yet, instead of sentencing him to as little as 20 years by having his sentence run concurrently, the jury imposed a term of 20 years for each count, with all five counts to run *consecutively*. Thus, Carroll was effectively sentenced to life. It seems odd that the jury would opt for a life penalty, rather than 20 years, if they had just learned that a large part of the foundation for their verdict was wrong. The evidence supports the Kentucky Supreme Court's conclusion that the jury almost certainly did not make the multiple logical leaps necessary to render his verdict unfair, especially in light of the testimony presented to the jury indicating that Carroll had not been convicted of molesting BC.

The R&R discusses at great length the evidence and arguments that support Carroll's claim that the matter was fabricated as part of a custody dispute, *e.g.*, the lack of physical

-12-

evidence, inconsistent statements between JC and MC about who slept on the top bunk, and Officer Woods' conclusion about BC's claim of abuse. As previously stated, however, the writ is only intended to cure serious constitutional errors, rather than determine guilt or innocence, *Herrera*, 506 U.S. at 400, because "[f]ederal courts are not forums in which to relitigate state trials." *Barefoot*, 463 U.S. at 887. The jury considered the weaknesses in the Commonwealth's case, which were pointed out to them during the defense closing, and ultimately rejected Carroll's defense. The only relevant question is whether it was objectively unreasonable for the Kentucky Supreme Court to conclude that counsel's error did not render Carroll's trial fundamentally unfair. As to the issue of the failure to identify Carroll's prior felony, the evidence supports the Kentucky Supreme Court's decision that such a failure did not lead to the inference that Carroll had been convicted for molesting BC. Certainly, the Kentucky Supreme Court's decision was not an "objectively unreasonable" application of *Strickland*, particularly in light of the significant leeway granted in employing the very general *Strickland* standard. *Cyars*, 383 F.3d at 493.

### 2. Waiver of Jury Trial

Carroll claims that his attorney told him that he could not waive a jury trial. The R&R concluded that this argument was procedurally defaulted. (R&R at 8). This argument was not made in either of his direct appeal briefs or his Kentucky Rule of Criminal Procedure 11.42 appeal brief. Claims not "fairly presented" to the state court are not cognizable on habeas review. *Baldwin*, 541 U.S. at 29; 28 U.S.C. § 2254(b)(1). Carroll has not made the requisite showing to excuse this error. *Reed v. Farley*, 512 U.S. 339, 353-55 (1994). Further, he did not

-13-

file objections to the R&R's conclusion on this point.  Even assuming, *arguendo*, that Carroll had preserved this issue, he could not prove *Strickland*'s prejudice prong because there is no reason to believe that a judge would have found differently than a unanimous panel of laypersons.

### 3.    Investigate/Interview Witnesses

Carroll argues that his trial counsel failed to investigate a list of potential witnesses he provided to trial counsel.  These witnesses included his first wife, present wife, eldest son, mother, sisters, and an expert in child sex abuse. The Commonwealth claimed that this issue was defaulted, but the magistrate disagreed. The Court adopts the R&R's conclusion in this respect. (R&R at 8).

The Kentucky Court of Appeals correctly identified *Strickland* as the appropriate constitutional standard.  However, it denied Carroll's claim, noting that he had not met the Rule 11.42 requirements of including "facts with sufficient particularity to generate a basis for relief" because he had not attached affidavits from his proposed witnesses and had, instead, simply given his own brief summary of their expected testimony.  (Appx. at 145). Thus, the Kentucky Court of Appeals concluded that Carroll had not produced sufficient evidence to demonstrate that his attorney's alleged error had prejudiced his trial.  This conclusion was not objectively unreasonable: without affidavits, Carroll's "evidence" consists only of his own self-serving declarations that do not undermine confidence in his trial.  It was not unreasonable for the Kentucky Supreme Court to deny a motion for a new trial based only upon self-serving statements, particularly when the affidavits should have been easy to obtain, since most were

-14-

from family members. *See Thompson v. Bell*, 315 F.3d 566, 592 (6th Cir. 2003), *superceded due to new evidence by* 373 F.3d 688 (2004), *cert. granted,* 125 S.Ct. 823 (2005) ("Thompson further failed to submit affidavits from witnesses who could have testified to his alleged 'bizarre behavior' in his federal habeas action. Thus, 'Thompson has failed to provide any significant probative evidence which would make it necessary for this Court to resolve a factual dispute.' The state court did not err in concluding that Thompson failed to state an ineffective assistance of counsel claim on this basis, and the district court properly granted summary judgment.").

### 4.     Investigate Prompting of Witness

Carroll claims that Leach's husband, Jeff Leach, coached JC during his testimony. He attaches affidavits from his mother and his sister which claim that Jeff Leach shook his head and mouthed "no" when JC was asked if he had ever heard Jeff and Connie Leach discuss lying in order to get custody of BC. They also claim that Mr. Leach shook his head "no" when JC said that he slept on the top bunk, contradicting MC's testimony that he had slept on the top bunk. The Commonwealth claimed that this issue was defaulted, but the magistrate disagreed. The Court adopts the R&R's conclusion in this respect. (R&R at 8).

The Kentucky Court of Appeals dismissed this claim on the basis of *Strickland*'s prejudice prong, noting that "J.C. testified as a witness for the defense and the trial court found that overall his testimony was very favorable to Carroll. Moreover, Carroll himself testified to his belief that the allegations resulted from his ex-wife's desire to obtain full custody of the children because Carroll was considering a move out of state." (Appx. at 146). Thus, the court concluded that "[w]e agree with the trial court's finding that Carroll has failed to show he was

-15-

prejudiced by the alleged incident of witness coaching." (Appx. at 146). This conclusion was not objectively unreasonable. Calling Carroll's mother and sister to testify about coaching would likely have provided little benefit to Carroll. Their testimony would have been viewed with suspicion and the jury would likely have wondered why they were watching Jeff Leach and not JC, during JC's testimony. Further, the trial judge did not observe witness coaching, the jury presumably did not observe it, Carroll did not observe it, and defense co-counsel seated next to Carroll did not observe it. The testimony from Carroll's mother and sister would have had little beneficial impact. *Cf. Young v. Miller*, 883 F.2d 1276, 1281 (6th Cir. 1989) (denying ineffective assistance of counsel claim, despite presence of "self-serving affidavits from Young's mother and co-defendant Gulley."). The decision of the Kentucky Court of Appeals that the failure to call Carroll's mother and sister to testify about witness coaching did not result in substantial prejudice is not clearly unreasonable.

### 5.    Plea Bargain

Carroll argues that his counsel was ineffective for failing to more strenuously argue in favor of accepting the Commonwealth's plea bargain. The R&R concluded that this argument was procedurally defaulted. (R&R at 8). This argument was not made in either of his direct appeal briefs or his Kentucky Rule of Criminal Procedure 11.42 appeal brief. Claims not "fairly presented" to the state court are not cognizable on habeas review. *Baldwin v. Reece*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1). Carroll has not made the requisite showing to excuse this error. *Reed v. Farley*, 512 U.S. 339, 353-55 (1994). Further, he did not file objections to the R&R's conclusion on this point. Finally, even if this issue were cognizable on habeas review,

Carroll admits that his attorney advised him "[i]t's a good deal, but it's up to you." (Appx. at 75). Thus Carroll was informed of the plea offer and was even encouraged to accept it. The failure to accept the plea lies at his own feet, not his attorney's.

### 6. Evidentiary Hearing

The R&R discusses whether Carroll is entitled to an evidentiary hearing on issues three and four, discussed *supra*. Carroll, however, did not request such a hearing in his petition. [Record No. 1] Moreover, the Court finds that an evidentiary hearing is not necessary. "Only if the court finds a factual dispute and that the petitioner may be entitled to relief should [the district court] grant an evidentiary hearing." *Witham v. United States*, 355 F.3d 501, 506 (6th Cir. 2004).

Issue three does not require a hearing because Carroll did not diligently pursue his claims before the state court by securing affidavits from his proposed witnesses to establish the nature of their testimony. Since most of these witnesses were his family members, the failure to secure some sort of statement from them constitutes a lack of diligence, foreclosing the possibility of a federal evidentiary hearing. *Hutchison v. Bell*, 303 F.3d 720, 729 (6th Cir. 2002). Issue four does not require a hearing because, even if the affidavits from Carroll's mother and sister are believed, Carroll could not prove a *Strickland* violation because he would not have shown that his trial was "unfair and unreliable," as discussed *supra*.

### B. FAIR AND IMPARTIAL JURY

Carroll makes two arguments in favor of his claim that he was denied a fair and impartial jury: (1) the jury was misinformed when it was told that Carroll was not permitted to reveal his

-17-

previous felony conviction and (2) jurors should have been excused after two prospective jurors indicated that they would favor hanging someone guilty of sodomizing a child.

### 1. Misinforming the Jury

Carroll again raises the issue of the trial judge and counsel's error in informing the jury that Carroll could not divulge the nature of his prior conviction. In this argument, he frames the issue as denial of his Sixth Amendment right to a fair and impartial jury. The Commonwealth argued before the Kentucky Supreme Court that Carroll had defaulted this claim because he had not attempted to introduce his prior felony at trial and had not objected to the trial court's instruction. (Appx. at 41). It correctly noted that Kentucky courts will only forgive such a failure when "manifest injustice" will result from failing to consider the issue on the merits. (Appx. at 37); *see also Partin v. Commonwealth*, 918 S.W.2d 219, 224 (Ky. 1996). The Kentucky Supreme Court agreed that the failure to try to introduce the evidence or object to the instruction prevented the court from reviewing the issue as one of trial court error. (Appx. at 65-66); *see also* Kentucky Criminal Rule 9.22 (litigant must contemporaneously object to an alleged error in order to preserve the issue for appeal). As such, it reviewed the claim as a matter of ineffective assistance of counsel for failing to cure the trial court's erroneous view of the law, as discussed *supra*. In the R&R, the Magistrate Judge concluded that this issue has been exhausted, ignoring the Commonwealth's conclusion that the argument was procedurally barred for failure to raise it during trial. Instead, the Magistrate Judge pointed out that the argument had been raised by Carroll in his post-conviction briefs. The Court rejects the R&R's conclusion on

-18-

this point, as Carroll clearly failed to meet Kentucky's procedural requirement for filing contemporaneous objections.[3]

Because Carroll failed to meet the state procedural requirement of filing a contemporaneous objection to alleged trial errors and because the Kentucky Supreme Court denied this claim on that basis, this issue is procedurally defaulted, to the extent that it is framed as a "fair trial" argument, distinct from the previously discussed ineffective assistance claim. *Gulertekin v. Tinnelmen-Cooper*, 340 F.3d 415, 424 (6th Cir. 2003). When a claim is dismissed by the state court on an independent state ground, the issue is not normally cognizable on federal habeas review. *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

> The Sixth Circuit has instructed that:
>
> [w]hen a state argues that a habeas claim is precluded by the petitioner's failure to observe a state procedural rule, the federal court must go through a complicated analysis. First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [Fourth], the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986) (citations omitted). The Sixth Circuit has more recently explained that "[t]he *Maupin* test is essentially a group of enumerated factors that is identical to the approach subsequently endorsed by [the Supreme Court in *Coleman v.*

---

[3]    There is no prejudice to Carroll in concluding that this argument is defaulted because the Court has considered it in the context of his ineffective assistance claim.

*Thompson*, 501 U.S. 722 (1991)]: that the cause and prejudice/actual innocence test is to be applied in all federal habeas cases where the state court decision is based on an independent and adequate state ground." *Scott*, 209 F.3d at 863 n.4.

Here, Kentucky properly applied its contemporaneous objection rule to this case. The state has a legitimate interest in requiring trial objections to be raised during the trial. Thus, the remaining consideration is whether Carroll has cause and resultant prejudice for the failure to raise the issue previously, or whether failure to consider the issue will result in a "fundamental miscarriage of justice." *Jones v. Toombs*, 125 F.3d 945, 946 (6th Cir. 1997). Assuming, *arguendo*, that Carroll could show cause, he cannot show either prejudice or a miscarriage of justice, for the reasons discussed previously as this argument related to Carroll's ineffective assistance of counsel claim. Despite Carroll's assertions, it does not appear that the jury was left with the false impression that he had been convicted of molesting BC, even though he did not identify the nature of his prior felony during the guilt phase of his trial.

### 2.    Juror Comments

During voir dire, two jurors stated that they favored hanging anyone who sodomized a child. Carroll argues that the trial judge should have stricken the entire panel, or, alternatively, stricken these two jurors. The Kentucky Supreme Court made the following conclusions about this claim:

> [t]he trial judge promptly lectured the jury at length that they were not to consider the issue of penalty unless and until they convicted the defendant. He then stressed that the jurors must be able to consider the entire penalty range, not just the maximum penalty. He also noted that hanging was not a permissible penalty in any event. The judge asked the jurors if they all believed they could consider the minimum penalty as well as the maximum penalty for the crime, and when he

> was satisfied with their responses, he permitted counsel to continue voir dire. Counsel did not seek to dismiss the two jurors for cause, or request the entire panel be dismissed. The admonition given here was more than adequate to inform the jurors of their obligations and to cure any possible prejudice to the defendant.

(Appx. at 64).

The Sixth Circuit has instructed that:

> [p]ursuant to the Sixth Amendment, for a finding of juror impartiality when a juror is challenged for cause, the relevant question is "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). A qualified juror need not be "totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 800 (1975). Rather, "'[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).

*Miller v. Webb*, 385 F.3d 666, 673 (6th Cir. 2004). "A trial court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness and may be overturned only for 'manifest error.'" *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004) (citations omitted).

In Carroll's case, the jurors were not challenged for cause, as noted by the Kentucky Supreme Court. (Appx. at 64). Accordingly, this claim was defaulted, as discussed *supra. See* Kentucky Criminal Rule 9.22 (litigant must contemporaneously object to an alleged error in order to preserve the issue for appeal). Further, there was no prejudice because the trial court's discussion and questioning of the venire ensured that the jurors were impartial. And even if the Court were to consider this claim as a properly preserved habeas argument, the Kentucky Supreme Court's decision, that the trial judge's extensive instruction and questioning regarding juror impartiality cured any possible prejudice, is not objectively unreasonable. The Court has

-21-

reviewed the trial video and agrees that any possible impartiality was cured by the judge's thorough instructions and questioning. The prospective jurors agreed that they could consider the entire range of punishment, should they find Carroll guilty.

## IV.   CERTIFICATE OF APPEALABILITY

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Further, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 527 U.S. 322, 336 (2003) (citations omitted). After reviewing the issues, the Court believes that a certificate of appealability is appropriate regarding the issue of whether Carroll's trial counsel was ineffective for failing to introduce the nature of Carroll's prior felony conviction.

## V.   CONCLUSION

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1)   The Magistrate Judge's Report and Recommendation [Record No. 12] is adopted, in part, and rejected, in part, as discussed in the body of this Memorandum Opinion and Order.

(2)   Carroll's petition for a writ of habeas corpus [Record No. 1] is **DENIED**.

(3)   The Respondent's motion to dismiss or, in the alternative, for summary judgment [Record No. 9] is **GRANTED**.

      (4)     This Court issues a certificate of appealability for the issue of whether Carroll's trial counsel was ineffective for failing to introduce the nature of Carroll's prior felony conviction.

      (5)     The Court concludes that the remaining issues presented by Carroll do not make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 527 U.S. 322, 336 (2003).

This 2nd day of May, 2005.

**Signed By:**

**_Danny C. Reeves_** DCR

**United States District Judge**

-23-